IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CONSTANCE BRACEY and ANNIE PEARL BRACEY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 3:12-cv-629 ) |
| ELEANOR D. BRACEY BARBOUR, JEAN MILLS STUART, LEON SHARBER, and ADAM R. HILL, | ) Judge Campbell ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Because the plaintiffs in this action proceed *in forma pauperis*, the Court must conduct an initial review of the complaint, prior to service on any defendant, and must dismiss it *sua sponte* if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). For the reasons set forth herein, the Court finds that the complaint fails to state a federal claim over which this Court has jurisdiction and must be dismissed without prejudice to the plaintiffs' ability to pursue any putative state-law claims she might have in state court.

**I.     FACTUAL ALLEGATIONS**

This *pro se* action is purportedly brought by plaintiffs Constance Bracey and her mother, Annie Pearl Bracey, and names as defendants Eleanor Bracey Barbour, who is Constance Bracey's sister; Jean Mills Stuart,[1] who is the court-appointed conservator of Annie Bracey's estate; Annie Bracey's guardian *ad litem*, Adam R. Hill; and Leon Sharber, who is referenced in the complaint but is not identified. The complaint consists of a three-page standard complaint form that was completed by Constance Bracey, accompanied by seventeen hand-written pages of legal argument and additional factual assertions, and another fifty pages of exhibits, mostly in the form of state-court filings. In summary, the complaint asserts that the defendants

---

[1] Documents attached to the complaint establish that Ms. Stuart's first name is actually "Jeanan." (*See, e.g.*, ECF No. 1, at 32, 33 (Notice Concerning Fiduciary Relationship completed and signed by "Jeanan Mills Stuart").)

have committed fraud upon Annie Bracey's estate and real property, and fraud upon the state court, and have thereby violated the plaintiffs' constitutional rights.

Based on documentation attached to the complaint, it is apparent that Annie Bracey has Parkinson's disease, advanced dementia, and Type 2 diabetes, and is mentally and physically unable to care for herself. She is approximately 79 years old. Up until the fall of 2011, she lived with her daughter Constance, who has power of attorney for health care decisions. (*See* ECF No. 1, at 67.[2])

In the fall of 2011, a conservator was appointed for Annie Bracey and she was placed in a nursing home, Bordeaux Long Term Care, against Constance Bracey's wishes and possibly over Annie's objections as well. State court documents in the record show that defendant Stuart was appointed as a Temporary Fiduciary to manage the personal, mental, medical and financial affairs of Annie Bracey on November 17, 2011, pursuant to a court order entered by the Seventh Circuit Court for Davidson County, Tennessee on that same day, after an emergency hearing at which guardian *ad litem* Hill, attorney John Reynolds, and counsel for various family members recommended the same. The conservatorship was later made permanent, and guardian *ad litem* Hill subsequently moved for an order asking the probate court to hold Constance Bracey accountable to Annie Bracey's estate for mismanagement of her funds.

In support of that motion, Hill submitted his Final Report of the Guardian *Ad Litem* to the state court, dated December 7, 2011, in which he reported that Annie was at that time living with her daughter Constance in public housing. On December 7, 2011, Hill and Stuart had made an unannounced visit to Annie, at which time they found very little food in the home, and had a discussion with Constance about the mismanagement of Annie's funds. As a result of this conversation, Hill concluded that Annie should be removed from Constance's care. Annie was taken to Vanderbilt Hospital's emergency room by Emergency Medical Services and later admitted to the hospital. The Final Report details the recent disposition of Annie's funds and states that for a significant period of time there had been unexplained large cash withdrawals by Constance every month; describes Annie's declining medical condition based on a court-ordered medical evaluation performed by Dr. William Petrie; and relays family members' and others' opinions that Constance Bracey was not an appropriate caregiver for her mother. It does not appear that Constance was held

---

[2] The validity of the power of attorney is uncertain as the document, though signed by Annie Bracey, was neither witnessed nor notarized. (*See* ECF No. 1, at 67.)

accountable for the financial mismanagement of her mother's funds, but Annie Bracey was removed from her home and placed in Bordeaux Long Term Care around that time. Constance Bracey asserts that the defendants all committed fraud upon the state court by representing that Constance Bracey was not caring properly for her mother. She also alleges that the defendants colluded and conspired with each other for the purpose of depriving Constance Bracey of her interest in her mother's property at 844 Joseph Avenue in Nashville.

In that regard, a warranty deed in the record shows that on September 20, 2010, Annie Bracey executed a deed reserving to herself a life estate in her interest in the property located at 844 Joseph Avenue, but conveying to Constance Bracey a fee simple remainder interest in Annie's one-half undivided interest in the same property. Defendant Eleanor Barbour, Constance's sister, owns the other one-half undivided interest. (ECF No. 1, at 26–27.) Based on allegations in the complaint, however, Constance Bracey appears to believe that her mother conveyed the property to her outright. (*See* ECF No. 1, at 7 (referencing Annie Bracey's "transfer" of the property to her daughter Constance Bracey and "designating" Constance Bracey as the deed holder). The record also contains a letter dated March 13, 2012 from John Reynolds to Jeanan Stuart, referencing a Judgment Lien against the property at 844 Joseph Avenue, recorded on or around March 13, 2012, based on an award of attorney fees and court costs against the estate of Annie Bracey. The lien, which is not in the record, purportedly "attaches to the proceeds from the sale of the Real Property." (ECF No. 1, at 49.)[3] The complaint alleges that the property is presently "in escrow" as the result of an order entered by Judge Kennedy of the Seventh Circuit Court for Davidson County, Tennessee, but that order is not in the record. Constance Bracey alleges that Stuart somehow benefitted by becoming the conservator of Annie Bracey's estate.

The complaint asserts that the defendants' actions violated the plaintiffs' constitutional rights, and that the defendants were acting under color of state law. The complaint asks that Annie Bracey be released from the nursing home and returned to her own home at 844 Joseph Avenue, and that the home at 844 Joseph Avenue be released from escrow. In other words, the plaintiffs ask this Court to relieve them of an

---

[3] The file also contains the first page of an order entered in Seventh Circuit Court for Davidson County, Tennessee on July 29, 2011. This page indicates that Annie Bracey had sued Eleanor Bracey Barbour asking the court to order the sale of the parties' house at 844 Joseph Avenue to the highest bidder. Because only the first page of the order was attached to the complaint, it is not clear how the court ruled, but it appears in any event that the house was not sold at that time.

order entered by the state court; in addition, the complaint also asks this Court to order Judge Kennedy (who is not named as a defendant) to pay Constance Bracey $300,000 in damages for the "wrongful seizure" of the house (ECF No. 1, at 3); and to award Constance Bracey $300,000 for "day to day pain and suffering" (*id.*). Plaintiff Constance Bracey also filed a motion for a temporary restraining order, requesting that the Court issue an order directing that Annie Bracey be immediately released from Bordeaux Long Term Care and that Constance Bracey and her mother be awarded possession of the residence at 844 Joseph Avenue. (ECF No. 3.)

The complaint itself further requests that this Court issue warrants for the arrest of Eleanor Bracey Barbour, Jean Mills Stuart, Leon Sharber, Adam Hill, State government officials, persons and family members charged with fraud and conspiring together to commit crimes against Constance Bracey and Annie Bracey. Plaintiff Constance Bracey asks the Court to order the Davidson County state government officials to restore her civil rights. The complaint also asks this Court to "investigate the true intent" of the conservator and guardian *ad litem*, and family attorney John Reynolds (who is not a named defendant).

## II. STANDARD OF REVIEW

If an action is filed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The screening provisions of § 1915(e)(2) apply to both prisoner and non-prisoner actions. *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). The Court is required to construe the plaintiff's *pro se* complaint liberally and to hold the complaint to a less stringent standard than one drafted by an attorney. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). To state a colorable claim, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. ANALYSIS AND DISCUSSION

### A. Constance Bracey Lacks Standing to Bring Suit on Behalf of Annie Bracey

The complaint is signed by Constance Bracey alone, and she signed on her own behalf; she did not purport to sign on behalf of Annie Bracey. Moreover, although Constance Bracey may have a power of attorney for Annie Bracey for health care decisions, Constance Bracey does not allege that she has power of attorney for all purposes or that she has otherwise been designated by Annie Bracey to bring this lawsuit on behalf of Annie Bracey. Further, even if a valid power of attorney existed that authorized Constance Bracey to institute a lawsuit as agent on behalf of Annie Bracey, Constance still would not have the authority to practice law by representing her mother in this lawsuit without an attorney. As another district court within the Sixth Circuit has found under similar circumstances:

> While an individual may represent [herself] *pro se*, that is, without the benefit of counsel, all states have laws prohibiting a person who is not a lawyer from representing another person in a legal proceeding. While the power of attorney gives Ms. Kapp legal standing to assert claims owned by her husband on his behalf, it does not authorize her to practice law by representing another person, her husband, in a lawsuit: that must still be done by a licensed attorney.

*Kapp v. Booker*, No. Civ. A. 05-402-JMH, 2006 WL 385306, at *3 (E.D. Ky. Feb. 16, 2006).

A party in federal court must proceed either through a licensed attorney or on her own behalf. 28 U.S.C. § 1654; *see also* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party"). No *pro se* plaintiff may sign pleadings on behalf of another plaintiff. *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear *pro se* on his own behalf, '[h]e has no authority to appear as an attorney for others than himself.'"). *See also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

The Court therefore concludes that Annie Bracey is not actually a plaintiff in this action. She did not sign the complaint; Constance Bracey does not allege that she has the authority to bring suit on behalf of Annie Bracey as her agent, and even if she did, Constance Bracey is not authorized to practice law by representing the interests of Annie Bracey in this lawsuit. The Court will therefore consider the complaint as brought by Constance Bracey alone. On this basis, the Court cannot grant the relief sought by Constance Bracey on behalf of Annie Bracey.

Specifically, to the extent the complaint alleges that the constitutional rights of Annie Bracey have been violated by her removal from her home and her confinement in Bordeaux Long Term Care and seeks an order directing the immediate release of Annie Bracey from the nursing home, plaintiff Constance Bracey does not have standing to seek that relief. She has no standing to vindicate alleged violations of Annie Bracey's rights or to seek to remedy those violations on behalf of Annie Bracey. Further, Constance does not have standing to assert *Annie's* property rights in the home on Joseph Avenue, only her own. The Court can therefore only consider the questions of whether Constance Bracey has alleged facts indicating that her own legal rights have been violated and whether this Court can award relief to vindicate those alleged violations.

### B. Subject-Matter Jurisdiction and the Rooker-Feldman Doctrine

This Court has an independent obligation to determine whether it has subject-matter jurisdiction over the action before it. *Kusens v. Pascal Co.*, 448 F.3d 349, 359 (6th Cir. 2006). To the extent Constance Bracey seeks this Court's intervention for the purpose of setting aside one or more state court orders to which she objects regarding the disposition of the house on Joseph Avenue, this Court lacks jurisdiction under the *Rooker-Feldman* doctrine to provide the requested relief. This doctrine is based on two United States Supreme Court decisions, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

The *Rooker-Feldman* doctrine provides that district courts lack subject-matter jurisdiction of "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). As this language suggests, the doctrine is confined to cases brought after state proceedings have ended. *Exxon Mobil*, 544 U.S. at 291--92. It appears that the state-court proceedings to which the plaintiff objects in this case have ended, and the plaintiff seeks review of one or more state court orders to which she objects, although those orders are not actually in the record before this Court. There is no indication that the plaintiff appealed the state-court decisions or otherwise made an effort to vindicate her rights within the state-court system.

In *Lawrence v. Welch*, the Sixth Circuit applied a "source of injury" test to determine whether the *Rooker-Feldman* doctrine applies.

> If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

531 F.3d 364, 368 (6th Cir. 2008) (quoting *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006)). The Sixth Circuit stressed in *McCormick* that the *Rooker-Feldman* doctrine is not a "panacea" to be applied whenever state court decisions and federal court decisions may overlap:

> The Supreme Court made clear in *Exxon Mobil* that the doctrine is confined to those cases exemplified by *Rooker* and *Feldman* themselves: when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law. In such a situation, a plaintiff seeks appellate review of the state court judgment, and the federal district court has no subject matter jurisdiction over such an action.

*McCormick*, 451 F.3d at 395.

The *Rooker-Feldman* doctrine has been held to bar a plaintiff's federal claim only when he was a party in the state court action. *Johnson v. DeGrandy*, 512 U.S. 997, 1006 (1994). However, the Sixth Circuit has held that a person in privity with the "state-court loser" is also bound by the *Rooker-Feldman* doctrine:

> The *Rooker-Feldman* doctrine prevents a party who loses in state court from appealing that decision to the lower federal courts, as only the Supreme Court has appellate jurisdiction over state court decisions. It would be inconsistent to disallow the party in the state suit to raise a federal claim but to allow his privy to bring the exact same claim. This is especially true because the source of the injury to the state court loser and his privy would be one and the same: the state court judgment.

*McCormick*, 451 F.3d at 396.

In sum, a lawsuit in federal district court is not the appropriate method for appealing a state-court action, nor is it an appropriate forum for relitigating questions previously decided by a state court. *See Tonti v. Petropoulous*, 656 F.2d 212, 216 (6th Cir. 1981) (the filing of an action under 42 U.S.C. § 1983 cannot serve as a basis for relitigating questions previously decided in the state courts); *Coogan v. Cincinnati Bar Ass'n*, 431 F.2d 1209, 1211 (6th Cir. 1970) (per curiam) (holding that the Civil Rights Act was not designed to be used as a substitute for the right of appeal, or to make a collateral attack upon the final judgment of a state court or to relitigate the issues which it decided). In the present case, plaintiff Constance Bracey complains primarily about the actions of third parties, the named defendants, as the source of her injury, but those actions resulted in the state court rulings she seeks to have set aside. And, although it is unclear

whether Constance Bracey was an actual party to the underlying state court proceedings, she is obviously in privity with Annie Bracey with respect to the disposition of the property on Joseph Avenue, as her interest in the house is co-extensive with that of Annie Bracey. Because Constance Bracey complains that the state court's disposition of the property violated Constance Bracey's constitutional rights, the Court construes her complaint as essentially seeking appellate review of the state court's action. To the extent the complaint requests that this Court enter an order relieving Constance Bracey of a final judgment entered by the state court, through issuance of an injunction or otherwise, this Court lacks subject-matter jurisdiction to perform such an action.[4]

  **C.**  **The Complaint Fails to States a Claim under 42 U.S.C. § 1983 as to Defendants Barbour, Sharber, and Hill**

Because it is not entirely clear, based on the factual allegations in the record, whether the *Rooker-Feldman* doctrine (or *Younger* abstention doctrine) applies, the Court also considers whether the plaintiff states a claim for violation of her constitutional rights under 42 U.S.C. § 1983. The Court finds that the plaintiff fails to state a claim upon which relief may be granted under that statute.

Federal courts are courts of limited jurisdiction. The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. *Lehigh Mining & Mfg. Co. v. Kelly*, 160 U.S. 327, 337 (1895). The facts showing the existence of jurisdiction must be affirmatively alleged in the complaint. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); Fed. R. Civ. P. 8(a)(1).

The basic statutory grants of subject-matter jurisdiction for federal courts are contained in 28 U.S.C. § 1331, which provides for "federal question" jurisdiction, and 28 U.S.C. § 1332, which provides for "diversity of citizenship" jurisdiction. It is clear from the addresses provided in the plaintiff's complaint for herself and

---

[4] Alternatively, to the extent the complaint may be construed as seeking injunctive relief against on-going state-court proceedings, this Court is precluded by the *Younger* abstention doctrine from providing relief. This doctrine, derived from the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), applies when "(1) there [are] on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Sun Ref. & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990) (citation omitted). State probate proceedings clearly implicate important state interests. *See Lepard v. NBD Bank*, 384 F.3d 232, 237 (6th Cir. 2004) (federal courts do not handle probate matters); *Lipford v. Ware*, No. 1:06-CV-01420, 2006 WL 1805567, at *2 (N.D. Ohio June 29, 2006) (applying *Younger* abstention in the context of a federal suit seeking to enjoin state probate proceedings, noting that probate proceedings "implicate important state interests that the federal courts explicitly do not address). Further, the plaintiff has not articulated any reason why she cannot raise her constitutional concerns in the state proceedings.

each defendant that diversity jurisdiction does not exist in this case. Diversity jurisdiction requires that the opposing parties be citizens of different states, 28 U.S.C. § 1332(a)(1), and in this case all parties are citizens of Tennessee.

Consequently, the complaint must on its face provide at least an arguable basis for federal-question jurisdiction in order to survive the court's screening under § 1915(e). A plaintiff properly invokes federal-question jurisdiction when she pleads a colorable claim "arising under" the Federal Constitution or laws. 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936)).

Here, the *pro se* complaint references the Eighth and Fourth Amendments to the United States Constitution and also invokes the plaintiff's right to due process. Although the plaintiff does not expressly identify the statutory authority through which she seeks to remedy the alleged violations of her rights, the Court construes the complaint as attempting to assert claims under 42 U.S.C. § 1983. That statute imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. "Section 1983 serves as a vehicle to obtain damages caused by persons acting under color of state law whose conduct violates the U.S. Constitution or federal laws." *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009), *cert. denied*, --- U.S. ----, 130 S. Ct. 2063 (2010).

To prevail on a claim under § 1983, the plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). A private actor may only be considered a person acting under color of state law (a state actor) if "(1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the state' and (2) the offending party 'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *Id.* (quoting *Tahfs v. Proctor*, 316 F.3d 584, 590--91 (6th Cir. 2003), and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

As an initial matter, the factual allegations in the complaint do not support the plaintiff's legal assertions that her federal rights have been violated. The heart of the plaintiff's complaint is her assertion that the defendants conspired and colluded to committed fraud upon the state court by lying to the court about Annie Bracey's physical and mental condition, about the plaintiff's ability to care for her mother, and about the plaintiff's mismanagement of her mother's funds. The defendants' alleged conspiracy and lies to the state-court judge resulted in rulings to which Constance Bracey objects, namely the removal of Annie Bracey from her home and placement in a nursing facility and the potential sale of Annie Bracey's house (in which Constance Bracey has a remainder interest) to pay attorneys' fees and court costs. Allegations of fraud, collusion, and conspiracy, even in the context of court proceedings, do not generally give rise to a federal constitutional claim. Fraud is state-law cause of action.

To the extent that Constance Bracey contends that Annie Bracey's constitutionally created liberty and property rights have been violated by state action, the Court finds for the reasons set forth above that Constance Bracey does not have standing to pursue such claims on behalf of Annie. Insofar as Constance Bracey alleges that she herself was deprived of a constitutional right relating to her interest in the property on Joseph Avenue, the allegations in the complaint do not suggest how Constance has been deprived of due process, nor does the complaint suggest that the State did not afford Constance adequate procedural rights prior to depriving her of a protected interest. *See Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009) (setting forth the elements of a procedural-due-process claim). The Court finds that the complaint does not set forth facts suggesting that Constance Bracey's constitutional rights have been violated.

Even if the plaintiff had alleged facts suggesting that her constitutional rights were violated, she must also show that the violation of her rights was caused by a person acting under color of state law. Of the four named defendants, three clearly are not state actors. First, the plaintiff's sister, Eleanor Bracey Barbour, is a private individual rather than a state actor; the plaintiff cannot state a § 1983 claim against her. The complaint contains no information whatsoever regarding defendant Leon Sharber or what role he took in the actions giving rise to the plaintiff's alleged injuries, other than to state that he, along with the other defendants "brought political pressure" upon Judge Randy Kennedy. (Complaint, ECF No. 1, at 5.) The complaint does not show that Sharber took any action that violated the plaintiff's rights, and certainly does not contain

sufficient information to provide the Court a reasonable basis for inferring that Sharber was a state official who acted under color of state law.

Defendant Hill acts on behalf of Annie Bracey as guardian *ad litem*. Although appointed by a court, a guardian *ad litem*—like, for instance, an attorney appointed by a court to represent a criminal defendant—is not a state actor, because he represents the best interests of the individual, Annie Bracey, not the state. *See, e.g.*, *Long v. Pend Oreille Cnty. Sheriff's Dep't*, 385 F. App'x. 641, 642 (9th Cir. 2010) (holding that a guardian *ad litem* was not a state actor for the purposes of § 1983); *Hennelly v. Flor de Maria Oliva*, 237 F. App'x 318, 320 (10th Cir. 2010) ("[G]uardians *ad litem* are not state actors for purposes of § 1983. . . ."); *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986) (like a private attorney who owes a duty to her client, a guardian *ad litem* "owes his or her undivided loyalty to the [incapacitated person], not the state"). *Cf.* Tenn. Code Ann. § 34-1-107(d)(1) (under state law, guardian *ad litem*'s responsibility is to report impartially to the court and to "determine what is best for the [disabled person's] welfare"); *Winchester v. Little*, 996 S.W.2d 818, 822-23 (Tenn. Ct. App. 1998) (holding that a guardian *ad litem* appointed by the court was not a "state actor" for purposes of a suit under § 1983, citing *Meeker v. Kercher*, *supra*).

The plaintiff does not name attorney John Reynolds as a defendant. Regardless, to the extent the complaint might be liberally construed to assert a claim for relief against Reynolds under § 1983, such claim would necessarily fail because John Reynolds, a private attorney, is not a state actor either. *See Smith v. Hilltop Basic Resources, Inc.*, 99 F. App'x 644, 648 (6th Cir. 2004) (taking note of the "the "vast weight of authority that private attorneys . . . do not act under color of state law within the meaning of section 1983").

In short, the complaint fails to state a claim under § 1983 against any of the defendants, because the plaintiff has not shown that her constitutional rights were violated. Further, as to defendants Barbour, Sharber, and Hill, and as to attorney John Reynolds, the plaintiff has not shown that these private individuals functioned as state actors. The claims against those defendants must be dismissed for failure to state a claim upon which relief may be granted.

**D.     Defendant Stuart Is Entitled to Absolute Immunity.**

Under Tennessee law, a conservator is appointed to provide protection and assistance to the person and/or property of a disabled person. Tenn. Code Ann. § 34-1-101(4). Like a guardian *ad litem*, a conservator has an obligation to act in the best interests of the person he or she is appointed to assist. *See*

*In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995) (noting that a conservator "occupies a fiduciary position of trust of the highest and most sacred character"). However, Tennessee courts recognize that conservators "act as the court's agent and are under the court's supervision." *Id.* Courts that appoint conservators "retain continuing control over . . . conservators because the persons who accept these appointments become 'quasi-officials' . . . of the court appointing them." *Id.* at 92 (citing *Logan v. Graper*, 4 S.W.2d 955, 956 (Tenn. 1927)). "[A] conservator is, in essence, the agent through whom the court manages the affairs of a ward. . . ." *Todd v. Justice*, No. E2009-02346-COA-R3-CV, 2010 WL 2350568, at *7 (Tenn. Ct. App. June 14, 2010).

As a result of their function as judicial agents, conservators may be deemed state actors. However, also because they act in a quasi-judicial role, conservators are entitled to absolute judicial immunity from suit, whether for injunctive relief or damages. *See Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984) (holding that persons who are integral parts of the judicial process are entitled to absolute immunity (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983))); *Moss v. Tenn. Dep't of Human Servs.*, No. 2:07-0012, 2008 WL 4552421, at *13 (M.D. Tenn. Oct. 7, 2008) (holding that a court-appointed conservator was "immune from civil rights claims arising from her actions as conservator" (citing *Kurzawa*, *supra*)).

"[J]udicial immunity" is shorthand for the doctrine of absolute immunity that protects judges from suit both in their official and individual capacities. *DePiero v. City of Macedonia*, 180 F.3d 770, 783–84 (6th Cir. 1999). Even though a State's sovereign immunity does not preclude individual-capacity suits against state officials for damages under § 1983, the judicial function is still protected by the common-law doctrine of judicial immunity. *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007). Judicial immunity is expansive and provides "immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). In fact, "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001). Moreover, judicial immunity is absolute in the sense that it extends to § 1983 suits seeking injunctive relief as well as to suits seeking only damages. *See Coleman v. Governor of Mich.*, No. 091139, 2011 WL 894430, at *5 (6th Cir. Mar.16, 2011) ("By enacting the 1996 Federal Courts Improvement Act . . . Congress . . . expanded the ambit of judicial immunity by amending § 1983 so as to prohibit injunctive relief against a judicial officer.").

Defendant Stuart is not a judge, but as a conservator she functioned as an agent of the state court. The plaintiff does not contend that Stuart at any time acted outside of her authority as conservator. The Court therefore concludes that this defendant must be afforded absolute quasi-judicial immunity from the plaintiff's suit.

As an aside, the Court notes that Constance Bracey asserts a claim for damages in the amount of $300,000 from Judge Kennedy, who is not a named defendant. Even if the complaint, construed liberally, may be construed to state a claim against Judge Kennedy, that claim likewise fails because Judge Kennedy is absolutely immune to civil lawsuits as well. For the reasons discussed above, such immunity covers Judge Kennedy to the extent the plaintiff seeks damages from him or seeks to enjoin any actions taken by him in his judicial capacity.

### III. CONCLUSION

As set forth above, the Court finds that Plaintiff Constance Bracey does not have standing to bring suit on behalf of her mother, Annie Bracey. To the extent that Constance Bracey seeks an injunction ordering the state court to rescind earlier orders or directing the state court to release the property on Joseph Avenue from escrow, this Court lacks jurisdiction under the *Rooker-Feldman* doctrine to provide such relief. To the extent the plaintiff seeks to bring claims under § 1983 for damages or injunctive relief, she has not shown a violation of her constitutional rights. Even if she did, the defendants are either not shown to be state actors who may be sued under 42 U.S.C. § 1983, or they are absolutely immune from the relief sought.

Finally, because the complaint fails to state any federal cause of action over which this Court has original jurisdiction, the Court may not exercise supplemental jurisdiction through 28 U.S.C. § 1367 over any state law claims set forth in the complaint. Any such state-law causes of action are therefore subject to dismissal, but without prejudice to the plaintiff's ability to bring them in state court.

For all these reasons, an order will enter dismissing the complaint.

_____
Todd Campbell
United States District Judge